## ATTACHMENT A

## AFFIDAVIT

I, John Marsh, a Special Agent with the Federal Bureau of Investigation, being duly sworn, depose and state as follows:

1. I have been employed as a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI"), since September 2006, and am currently assigned to the Oxford, Mississippi Resident Agency in the Jackson Division. While employed by FBI, I have investigated numerous federal criminal violations including matters related to national security, threatening communications, narcotics trafficking, public corruption and violent crimes. I have gained experience through training at the FBI Academy and everyday work relating to conducting these types of investigations. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 32(a)(1) and 32(c), and I am authorized by law to request a criminal complaint.

2. There is probable cause to believe that Cory Wayne PATTERSON committed violations of Title 18, United States Code, Section 32 (willful destruction of an aircraft within the special aircraft jurisdiction of the United States or involved in interstate commerce and willfully conveying a threat to do so).

3. I am familiar with the information contained in the affidavit based on my personal knowledge, my review of documents and other evidence collected, and my conversations with other law enforcement officers. Where the contents of documents and the actions, statements, and conversations of others reported herein, they are reported in substance and in part, except where otherwise indicated. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

4. Title 18, United States Code, Section 32 provides as follows:

(a) Whoever willfully—

(1) sets fire to, damages, destroys, disables, or wrecks any aircraft in the special aircraft jurisdiction of the United States or any civil aircraft used, operated, or employed in interstate, overseas, or foreign air commerce;

(2) places or causes to be placed a destructive device or substance in, upon, or in proximity to, or otherwise makes or causes to be made unworkable or unusable or hazardous to work or use, any such aircraft, or any part or other materials used or intended to be used in connection with the operation of such aircraft, if such placing or causing to be placed or such making or causing to be made is likely to endanger the safety of any such aircraft;

(3) sets fire to, damages, destroys, or disables any air navigation facility, or interferes by force or violence with the operation of such facility, if such fire, damaging, destroying, disabling, or interfering is likely to endanger the safety of any such aircraft in flight;

(4) with the intent to damage, destroy, or disable any such aircraft, sets fire to, damages, destroys, or disables or places a destructive device or substance in, upon, or in proximity to, any appliance or structure, ramp, landing area, property, machine, or apparatus, or any facility or other material used, or intended to be used, in connection with the operation, maintenance, loading, unloading or storage of any such aircraft or any cargo carried or intended to be carried on any such aircraft;

(5) interferes with or disables, with intent to endanger the safety of any person or with a reckless disregard for the safety of human life, anyone engaged in the authorized operation of such aircraft or any air navigation facility aiding in the navigation of any such aircraft;

(6) performs an act of violence against or incapacitates any individual on any such aircraft, if such act of violence or incapacitation is likely to endanger the safety of such aircraft;

(7) communicates information, knowing the information to be false and under circumstances in which such information may reasonably be believed, thereby endangering the safety of any such aircraft in flight; or

(8) attempts or conspires to do anything prohibited under paragraphs (1) through (7) of this subsection;

shall be fined under this title or imprisoned not more than twenty years or both.

\*       \*       \*

(c) Whoever willfully imparts or conveys any threat to do an act which would violate any of paragraphs (1) through (6) of subsection (a) . . . of this section, with an apparent determination and will to carry the threat into execution shall be fined under this title or imprisoned not more than five years, or both.

5. "Aircraft" is defined by Title 18, United States Code, Section 31 as "a civil, military, or public contrivance invented, used, or designed to navigate, fly, or travel in the air." 18 U.S.C. § 31(a)(1).

6. "Special aircraft jurisdiction of the United States" includes any of the following aircraft in flight:

  a. a civil aircraft of the United States

  b. an aircraft of the armed forces of the United States

  c. another aircraft in the United States

  d. another aircraft outside the United States –

   i. that has its next scheduled destination or last place of departure in the United States, if the aircraft next lands in the United States;
   ii. on which an individual commits an offense (as defined in the Convention for the Suppression of Unlawful Seizure of Aircraft) if the aircraft lands in the United States with the individual still on the aircraft; or
   iii. against which an individual commits an offense . . . if the aircraft lands in the United States with the individual still on the aircraft.

  e. any other aircraft leased without crew to a lessee whose principal place of business is in the United States or, if the lessee does not have a principal place of business, whose permanent residence is in the United States.

49 U.S.C. § 46501(2).

7. "Interstate air commerce" means "the transportation of passengers or property by aircraft for compensation, the transportation of mail by aircraft, or the operation of aircraft in

furthering a business or vocation . . . between a place in (i) a State, territory, or possession of the United States and a place in the District of Columbia or another State, territory, or possession of the United States . . . and (B) when any part of the transportation or operation is by aircraft." 49 U.S.C. § 40102(a)(24).

## PROBABLE CAUSE

8. On September 3, 2022, FBI received information from the Tupelo Police Department regarding a stolen Beechcraft, model C90A, King Air serial number LJ-1156, bearing tail number 342 ER ("the aircraft") flying over Tupelo, Mississippi airspace being piloted by Cory Wayne PATTERSON, an unlicensed pilot. PATTERSON worked at the Tupelo Regional Airport doing various odd jobs, including fueling planes, for a number of years.

9. PATTERSON called 911 on his cellular telephone and threatened to crash the airplane into the Wal-Mart on West Main Street in Tupelo, Mississippi. PATTERSON specifically stated, "I have stolen a plane . . . get the Walmart on West Main Street evacuated because I am going to crash into it." He later urges the 911 operator to get Walmart evacuated as he did not want to hurt anyone. The operator asked the caller, who identified himself as "Cory", "Is it intentional that you are about to crash?" PATTERSON responded, "Oh yeah." PATTERSON provided additional details about his taking flying lessons "way back in the day" but that he mostly just looked at YouTube videos to figure out how to fly the plane. When asked what his motive was, PATTERSON stated, "I just don't want to live anymore and want to cause chaos while I'm at it." He claimed, however, that he was not like a mass shooter in that he did not want to hurt anyone else. Twelve minutes into the 911 call, PATTERSON states, "Y'all should see me circling [the airplane] right now, so know that this a real threat and not me fucking around with y'all."

10. The 911 operator makes several pleas to PATTERSON to land the plane without hurting anyone. PATTERSON responds that he's either going to crash the airplane into Walmart or crash it into a field. He acknowledges running the fuel low so the "explosion ain't too big."

11. The Beechcraft, model C90A, King Air aircraft is owned by Southeast Aviation, LLC, based in Oxford, Mississippi. The manager is listed as Dr. Land Renfroe who used the aircraft personally, as well as allowed others to use the aircraft and reimburse Southeast Aviation, LLC for its use. Since June, flight logs show the aircraft taking approximately twenty (20) interstate flights from the Tupelo Regional Airport. Destinations include Alabama, Arkansas, Missouri, South Carolina, Florida, Georgia, Kansas, Tennessee, Nebraska and Texas. The Beechcraft, model C90A, King Air serial number LJ-1156 is recognized by the Federal Aviation Administration (FAA) as having a valid certificate issued on October 13, 2020, and expiring on October 31, 2023.

12. Due to the threat made by PATTERSON, Wal-Mart and other businesses evacuated their customers. PATTERSON continued to fly the aircraft for several hours while communicating with law enforcement officials, an instructor pilot, his family and others using both his cellular telephone and Facebook.com messenger service. PATTERSON received instruction over the telephone on landing the aircraft at the Tupelo Regional Airport from a licensed professional pilot. PATTERSON was able to lower the landing gear and made an approach on the runway but aborted the runway landing attempt at the last minute. PATTERSON eventually crash landed the aircraft in a bean field in Tippah County, Mississippi and was arrested near the aircraft. The landing causing significant damage to the aircraft, including the landing gear being torn from the aircraft, the destruction of the propellors and impact damage to the underside of the aircraft.

13. The affiant spoke to Glen Hilton, an instructor pilot who is both familiar with the aircraft and who saw it after PATTERSON landed it in the bean field. Hilton's opinion was the aircraft was a total loss and would probably be sold for parts rather than being repaired.

14. The affiant contacted the aircraft owner, Dr. Land Renfroe and received verbal consent for a search to be conducted of the aircraft. Several items were taken during the search, including notebooks and handwritten letters. While the affiant was unable to thoroughly examine all the documents, a checklist of how to start the aircraft, as well as notes seemingly written by PATTERSON detailing his motive were found. Screenshots of his message to "The World" are provided here:





15. The affiant searched the FAA.gov database for the name CORY WAYNE PATTERSON and the database indicated he was issued a "student pilot" certification on February 6, 2013. As such, PATTERSON was not authorized to operate an aircraft on his own.

CONCLUSION

16. Based on the above facts it is the affiant's belief that PATTERSON committed violations of Title 18, United States Code, Section 32 (willful destruction of an aircraft and threats made conveying same).

John Marsh, Special Agent
Federal Bureau of Investigation

Attested to by the complainant in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 by telephone, this the 12th day of September, 2022.

UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF MISSISSIPPI